**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ALBERTO L. RIVERA OSTOLAZA, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CIVIL NO.: 23-1364 (MEL) |

**OPINION AND ORDER**

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the court is Mr. Alberto L. Rivera Ostolaza's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 3. On July 15, 2016, Plaintiff filed his application for Social Security benefits, alleging that he initially became unable to work due to disability on February 15, 2016 (the "onset date"). Tr. 724. Prior to the onset date, Plaintiff's past relevant work was as a "Municipal Maintenance Worker." Tr. 36. Plaintiff's disability claim was initially denied on November 1, 2016. Tr. 22. Subsequently, Plaintiff requested reconsideration of that decision on December 21, 2016, which was denied on February 28, 2017. Tr. 22, 515. As a result, on April 17, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), who thereafter found that Plaintiff was not disabled on January 3, 2019. Tr. 500. Consequently, Plaintiff requested for review of that decision on February 22, 2019. Tr. 597–600. Upon review, the Appeals Council remanded Plaintiff's case back to an ALJ, reasoning that the ALJ erroneously found Plaintiff's date of last

insured to be June 30, 2017, instead of June 30, 2018. Tr. 505–508. Hence, there was an unadjudicated period between July 1, 2017, and June 30, 2018, that had to be considered. *Id*.

Accordingly, a second hearing was held on August 18, 2021, before another ALJ, who issued a similar decision on November 17, 2021, finding that Plaintiff was not disabled.[1] Tr. 22, 38. Plaintiff requested a review of the decision on January 14, 2022, which was denied on June 2, 2023, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1, 5–6, 721–723. As a result, Plaintiff sought judicial review on July 12, 2023. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 16, 21.

## II.   LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 7 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such

---

[1] The ALJ held a telephone hearing "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." Tr. 22.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ

concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.   THE ALJ'S DECISION

In the ALJ's decision dated November 17, 2021, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through June 30, 2018, the date last insured. Tr. 24.[2] At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of February 15, 2016, through the date last insured of June 30, 2018 (the "relevant period"). Tr. 25. At step two, the ALJ determined that Plaintiff had the following severe impairments: "lumbar spine disorder, status-post spinal fusion, cervical spine disorder, bilateral carpal tunnel syndrome, left peroneal and right tibial motor axonal neuropathy, and obesity." *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 28. Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for lifting, carrying, pushing, and pulling 10 pounds occasionally and less than 10 pounds frequently. He can sit for six hours, alternate to standing for one minute, after every one-hour of sitting, stand for two hours, alternate to sitting for one minute, after every one-hour of standing, and walk for two hours, alternate to sitting for one minute, after every one-hour of walking. [Plaintiff] can frequently perform tasks that require bilateral handling items, fingering, and feeling. [Plaintiff] can occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds, can never work at unprotected heights, can

---

[2] Plaintiff was born in 1986. *E.g.*, Tr. 36, 724.

occasionally stoop, kneel, and crouch, and can never crawl. [Plaintiff] can never work at unprotected heights, can occasionally work moving mechanical parts, and can never operat[e] a motor vehicle. [Plaintiff] can occasionally work in vibration.

Tr. 30. At step four, the ALJ determined that during the relevant period, Plaintiff was not capable of performing his past relevant work as a "Municipal Maintenance Worker." Tr. 36. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work capacity to a vocational expert ("VE"). Tr. 36–37. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following occupations: document preparer microfilming, addresser, and call-out operator. Tr. 37. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 37–38.

## IV.  ANALYSIS

Plaintiff claims that the ALJ erred in not assessing the necessity of an assistive device (a "cane") when determining his RFC. ECF No. 16 at 1, 15, 20. Specifically, Plaintiff contends that the ALJ failed to include the use of a cane in the RFC or explain the rationale in excluding it. ECF No. 16 at 20. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed." *Figueroa v. Comm'r of Soc. Sec.*, No. CV 19-1069, 2020 WL 13481006, at *5 (D.P.R. Sept. 30, 2020) (quoting SSR 96-9p, 1996 WL 374184, at *7).

Plaintiff alludes to the fact that on May 28, 2013, he was prescribed a "cane for walking." Tr. 191, 915.[3] While this prescription reasonably shows that Plaintiff needed a cane in 2013, it does not advance his argument for two reasons. First, the cane was prescribed in 2013 approximately three years before his onset date. Thus, it does not necessarily follow that Plaintiff

---

[3] Although the original Spanish version details the date of when the prescription was issued, the translated English version does not. *Compare* Tr. 191, *with* Tr. 915.

medically required the cane as of February 15, 2016, his onset date, based on this May 2013 prescription alone. Second, for a cane to be medically required, medical documentation must "describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374184, at *7. Here, the May 28, 2013, prescription vaguely states, "Please give cane for walking." Tr. 191. It does not provide any other information, and therefore fails to describe the circumstances for which it is needed. Hence, the May 28, 2013, prescription, which the ALJ did indeed explicitly acknowledge in her decision (Tr. 31–32), fails to establish that the ALJ erred by excluding a cane from Plaintiff's RFC.

Next, Plaintiff points to several physicians' notes acknowledging that Plaintiff walked with a cane. Tr. 1025 ("[Plaintiff] has had recurrence of the pre-op giveaway weakness on the left side and still uses a cane for ambulation."); Tr. 32 (citing Tr. 435) ("Dr. Peter Psarras Castro reported that [Plaintiff] walked with a cane."). However, while the physicians' notes simply state the fact that Plaintiff was observed using a cane to walk, they do not establish a need for a hand-held assistive device. *See Figueroa,* 2020 WL 13481006, at *5 ("For instance, although Dr. De Jesús noted that Figueroa ambulated with a cane, . . . this observation does not establish that a cane is medically required."); *Staples v. Astrue*, 329 F. App'x 189, 192 (10th Cir. 2009) (Physician's note that claimant "still uses a cane to walk," could not alone provide sufficient evidence "of the medical necessity for the use of a cane"). Accordingly, Plaintiff fails to establish that the ALJ erred in assessing the need for a cane because Plaintiff fails to point to evidence suggesting that a cane was medically required.[4]

---

[4] Plaintiff also points to examining neurologist Dr. Winston R. Ortiz's ("Dr. Ortiz") evaluation note where he states that Plaintiff "limped with his left leg and used a cane in his right hand (essential)." Tr. 880. As with the previous physicians' notes, mere observation that a person is seen limping and using a cane is, in and of itself, not enough to conclude that a cane is medically required. Now, to the extent that Dr. Ortiz's note suggests by the term "essential"

7

In addition to the physicians' notes above, Plaintiff emphasizes a progress note that he proffers was made by a "mental practitioner." ECF No. 16 at 17. The note states that Plaintiff "report[ed] that he fell on Monday when (illegible) his cane (English text) remains off-balance, which means he needs the cane."[5] Tr. 261. Plaintiff asserts that this note demonstrates that he needs a cane because he has a continuous imbalance. ECF No. 16 at 17. This contention, however, is untenable.

As an initial matter, the translation is deficient on its face because it fails to identify who is the treating physician, his or her field of specialty, if any, the name of the patient, and the date of the progress note. *See* Tr. 261. Thus, the translation fails to put the court in a position to assess this specific progress note, and the court cannot consider the Spanish document to supplement the translation's deficiencies. *Cf. Cesareo-Rosado v. Estado Libre Asociado de Puerto Rico,* 110 F. Supp. 3d 356, 357 (D.P.R. 2015) ("The . . . First Circuit requires strict enforcement of the English-language requirement where the untranslated document is key to the outcome of the proceedings." (citing *Puerto Ricans for Puerto Rico Party v. Dalmau,* 544 F.3d 58, 67 (1st Cir. 2008)).

However, even if *arguendo* this progress note was from September 2016, putting it within the relevant period, Plaintiff fails to point to anything in the record suggesting that his continuous imbalance problem continued after September 2016.[6] Moreover, the note states that the imbalance was observed after "he fell on Monday." Tr. 261. Hence, it is unclear whether Plaintiff's imbalance was the result of a fall that caused a temporary situation as opposed to a

---

that Plaintiff required a cane, it still fails to establish that a cane was medically required because the statement does not explain the circumstances (e.g., all the time or only in certain occasions) for which the cane is needed.

[5] The English translation explicitly states the phrase "English text" instead of providing the actual words or numbers from the original document. *See* Tr. 261.

[6] The other notes that Plaintiff cites, as already explained above, only suggest that Plaintiff was observed using a cane, not that he suffered from a continuous imbalance problem requiring him to walk with a cane.

8

long-term, ongoing problem. In addition, as alluded above, neither the English translation nor original document state the name or specialty of the physician who drafted the note. *See* Tr. 261. Plaintiff, however, concedes that the physician is a "mental practitioner." ECF No. 16 at 17. This, in turn, could mean that the physician was either a psychologist or a psychiatrist. Nonetheless, it is not self-evident that a "mental practitioner" would be qualified to opine on whether an individual requires an assistive device for walking. Considering all the matters discussed above, Plaintiff has failed to show prejudicial error.

      Finally, Plaintiff takes issue with medical opinion of Dr. Jorge Hernández Denton ("Dr. Hernández"). Specifically, Plaintiff contends that the ALJ erred in relying on said opinion because Dr. Hernández "totally ignored the use of a cane." ECF No. 16 at 20. This assertion as stated, however, is incorrect because Dr. Hernández acknowledged Plaintiff's use of the cane in his testimony. Tr. 65. Moreover, as established in the reasoning above, this argument is a nonstarter: Plaintiff has failed to establish that he medically required a cane, and therefore Dr. Hernández's opinion was not required to take it into consideration. Plaintiff also claims that Dr. Hernández gave an "ambiguous if not contradictory statement" when he asserted the following: Plaintiff can "stand for two hours, alternate to sitting for one minute, after every one-hour of standing[;] and walk for two hours, alternate to sitting for one minute, after every one-hour of walking." ECF No. 16 at 19 (citing Tr. 35). Thus, Plaintiff argues that the ALJ erred by not addressing this discrepancy. However, this argument cannot prosper because Dr. Hernández's statement is neither ambiguous nor contradictory. Accordingly, the ALJ did not err in relying on Dr. Hernández's medical opinion.

## V. CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence and contained no error warranting remand. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of September, 2024.

s/Marcos E. López  
U.S. Magistrate Judge